573 F.2d 229
 Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor-Appellant,
National Education Association, Inc., Plaintiff-Intervenor,
v.
EUFAULA CITY BOARD OF EDUCATION et al., Defendants-Appellees.
 No. 77-3416.
 United States Court of Appeals,
Fifth Circuit.
 May 18, 1978.
 
 Barry E. Teague, U. S. Atty., Montgomery, Ala., James P. Turner, Deputy Asst. Atty. Gen., George A. Schneider, Walter W. Barnett, U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., for plaintiff-intervenor-appellant.
 Robison, Belser, Brewer & Mancuso, Vaughan H. Robison, Robert T. Meadows, III, Montgomery, Ala., for defendants-appellees.
 Gray, Seay & Langford, Montgomery, Ala., Myron H. Thompson, Dothan, Ala., for Anthony T. Lee, et al. and National Education Association, Inc.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before COLEMAN, TJOFLAT and FAY, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 This appeal arises from the implementation of a desegregation order entered on March 24, 1970, governing desegregation of the city school system of Eufaula, Alabama. The city of Eufaula operates its own school system within Barbour County, Alabama, which also has a separate school system. Pursuant to this Court's opinion in Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970), the order contained the following provision regarding any transfer policy adopted by the Eufaula system:
 
 
 2
 If the school district grants transfers to students living in the district for their attendance at public schools outside the district, or if it permits transfers into the district of students who live outside the district, it shall do so on a non-discriminatory basis, except that it shall not consent to transfers where the cumulative effect will reduce desegregation in either district or reinforce the dual school system.
 
 
 3
 On May 16, 1977, the United States filed a motion for further relief alleging that the Eufaula City Board of Education had violated the Singleton transfer provision by permitting the attendance in the Eufaula schools of non-residents whose attendance had the cumulative effect of reducing desegregation in the school districts involved.[1] The United States requested, inter alia, that the Eufaula City Board of Education be enjoined from accepting any transfers having such a cumulative effect and that the Board be ordered to adopt and implement procedures to assure that no further violations of the transfer provision occur.
 
 
 4
 After an evidentiary hearing, the district court concluded that the transfer policy did not have the cumulative effect of reducing desegregation in the districts involved except with respect to transfers from Quitman County, Georgia.[2] R. Vol. I, 125. Nevertheless, the district court enjoined the Eufaula City Board of Education from accepting "student transfer applications from students residing outside Barbour County." R. Vol. I, 125. The court refused to order the Board to adopt procedures to police transfers to assure compliance with the transfer provision. Because we have concluded that the order of the district court enjoining the transfer of students from counties other than Barbour County is erroneous in light of its finding that the transfer policy has the cumulative effect of reducing desegregation only with respect to transfers from Quitman County, Georgia, and because further findings are necessary in order to assess the validity of the transfer policy proposed by the Board, we vacate the order dated November 4, 1977, and remand this case for further proceedings consistent with this opinion.
 
 
 5
 The facts underlying this appeal are not in serious dispute. The Eufaula City School District[3] is coextensive with the city limits. The Eufaula system has admitted into attendance all nonresidents, whether black or white, who have applied for admission since the 1970 desegregation order. Prior to the filing of the motion for further relief by the United States, the Eufaula City Board of Education had made no concerted effort to analyze the cumulative effect of the transfer program on the Eufaula system nor on the districts in which the students would have attended school if not for the transfers. Nor did the Board have a policy of verifying that students listed as residents were in fact residents of the city of Eufaula. In response to the motion, the Eufaula Board undertook an analysis of the effect of the transfers on all school districts involved and verified that each student listed as a resident of Eufaula was a resident in fact. No effort was made, however, to determine which particular schools in the home districts the transferees would have attended if not for the transfers.
 
 
 6
 At the commencement of the 1977-78 school year, 386 out-of-district students were enrolled in the Eufaula system.[4] It is uncontroverted that, if all of the out-of-district students were returned to their home districts, with the exception of Quitman County, Georgia, the maximum change in racial composition of any district involved would be 4.24%.[5] Nevertheless, at the evidentiary hearing of August 18, 1977, Dr. William Moorer, a member of the Eufaula Board of Education, testified that in an effort to resolve the situation the Board "would make the offer that we would accept transfers only from Barbour County." R. Vol. II, 78.
 
 
 7
 The United States first contends that the district court erred in failing to enjoin the Eufaula City Board of Education from accepting transfer applications of white students residing in Barbour County because these transfers reduce desegregation and contribute to the evolution of dual school systems consisting of "black" county schools and "white" city schools. The position of the United States is that in the event white students wish to transfer into the Eufaula system, Singleton only permits a strict one-for-one exchange.[6] The Board counters with the argument that the 4% (74 to 78%) increase in the percentage of black students in the Barbour County school district occasioned by the transfer policy is de minimus, and hence permissible, and is justified in any event by the enhanced educational opportunities afforded by the Eufaula system.[7]
 
 
 8
 We reject the contention of the government that the transfer of white students can only be permitted on a strict one-for-one exchange basis. We do so because we refuse to draw the line so hard and fast. In measuring the cumulative effect of a student transfer program on desegregation, the Court must do so from a qualitative viewpoint, without blind deference to an objective mathematical formula.
 
 
 9
 Although not directly in point factually, in Davis v. Board of School Commissioners of Mobile,[8] this Court recognized the general principle that:
 
 
 10
 (S)chool desegregation can first be measured quantitatively, using percentages as a rough rule of thumb, but ultimately must be measured qualitatively, judging whether schools are still identifiable as white or Negro.
 
 
 11
 393 F.2d at 693.
 
 
 12
 Similarly, in dealing with the validity of an optional transfer policy, the Sixth Circuit in NAACP v. Lansing Board of Education, 559 F.2d 1042 (6th Cir. 1977), recently held as follows:
 
 
 13
 Where the foreseeable and actual result of a transfer policy is to increase the racial identifiability of schools with large minority enrollment, continuation of the policy gives rise to a presumption of segregative intent.
 
 
 14
 559 F.2d at 1051.
 
 
 15
 The focal issue to be considered on remand with respect to the transfer of students from the Barbour County to the Eufaula system is whether these transfers have a qualitative effect on desegregation in either of the districts.[9] We conclude that there is not sufficient evidence in the record from which such a determination can be made. Although the record indicates that the return of all transferees from Barbour County will reduce the overall black student population in Barbour County from 78% to 74%, there is no indication of the effect of the transfer program on the individual schools in Barbour County. The six public schools in Barbour County range from 60.3% black to 100% black in Rebecca Comer High School. R. Vol. III, 56, 65, 74, 83, 92, 101. Because only approximately 570 students attend the all-black Rebecca Comer High School, the question of how many of the 169 white students who transferred into the Eufaula system for the 1977-78 school year reside in the Comer attendance zone becomes quite significant. Additionally, the record does reflect the effect on the Eufaula system on a school-by-school basis if all transfer students were returned to their home districts. R. Vol. III, 1. However, on remand, the district court should determine the cumulative effect on the Eufaula system on a school-by-school basis if only Barbour County transfer applications are accepted.
 
 
 16
 The "cumulative effect" of the transfer program must be measured on a school-by-school basis. This is the only operational level on which actual segregative effect can be measured, and upon which it can be determined whether the transfer policy reduces desegregation or reinforces the existence of a constitutionally impermissible dual school system.[10]
 
 
 17
 The United States next contends that the district court erred in enjoining transfers from counties other than Quitman County, Georgia, because the court specifically found that only the transfers from Quitman County had the cumulative effect of reducing desegregation or reinforcing the existence of a dual school system. The basis of this contention is that "judicial powers (in the realm of school desegregation) may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary." Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Apparently, the district court enjoined the transfer of students from counties other than Quitman County because William D. Moorer, a member of the Eufaula City Board of Education, testified that in order to satisfy the government, the Board was making an offer to accept transfers from Barbour County only.
 
 
 18
 The United States nevertheless urges this Court to order the district court to enjoin the transfer of white students from the counties involved into the Eufaula system. Simply stated, the United States takes the position that the district court correctly enjoined the acceptance of transfer applications from students residing outside Barbour County, but for the wrong reason. According to the United States, transfers from all other counties should be enjoined because the district court committed error in finding that these transfers do not violate Singleton, and not because the Eufaula Board may have agreed to accept transfers from Barbour County only.
 
 
 19
 It is clear that the district court committed error in enjoining the Eufaula City Board of Education from accepting transfer applications from any county other than Barbour County, Alabama. This is so in light of the express finding by the district court that with respect to transfers from counties other than Quitman County, Georgia, the transfer policy does not have the cumulative effect of reducing desegregation or reinforcing the existence of a dual school system. Swann teaches that injunctive relief must not transcend the scope of the violation. The district court committed error in enjoining the acceptance of transfer applications in the absence of a finding that said transfers reduce desegregation or reinforce the existence of a dual school system.[11]
 
 
 20
 In view of the decision by the Eufaula Board of Education to accept transfer applications only from students residing in Barbour County commencing with the 1978-79 school year, it will be unnecessary on remand to determine whether transfers from the other counties involved have a cumulative effect on desegregation or reinforce the existence of a dual school system in either the transferring or receiving district.[12] However, at such time as the Board may choose to modify such policy, and before a new transfer policy is implemented, the district court will be required to conduct such proceedings as may be necessary to determine whether the proposed policy has the cumulative effect of reducing desegregation or reinforcing the existence of a dual school system in the school districts involved. As we have held, cumulative effect must be measured on a school-by-school basis. The record reflects that such analysis was not undertaken in the proceedings below.[13] Once again, the district court will be called upon to frame its order to alleviate any adverse desegregative effects found to exist. It may, for example, be necessary to enjoin the acceptance of transfer applications from a district as a whole or only from specified schools within a district.
 
 
 21
 The United States next contends that the district court erred in failing to order the Eufaula City Board of Education to adopt reasonable procedures to assure that the acceptance of transfer students does not have the cumulative effect of reducing desegregation or reinforcing the existence of a dual school system in the school districts involved. The starting point, the United States argues, must be to require the Eufaula Board to adopt procedures which will enable it to distinguish residents from non-residents,[14] and, after a student is determined to be a non-resident and thus a potential transferee, to identify the individual transferring school which the student would attend but for the transfer, as well as the identity of the receiving school. In their brief, the Eufaula Board of Education candidly acknowledges its obligation to assure compliance with the Singleton requirement that the transfer policy not have the effect of reducing desegregation or reinforcing the existence of a dual school system. The Board, however, resists the imposition of any specific procedural guidelines, contending that the limited number of personnel available to police the transfers and the practical difficulties inherent in such policing should preclude the necessity of following any strict procedure. The district court, in its memorandum opinion, held that relief with respect to procedural guidelines was unnecessary because the Board had agreed to police the system to assure that a cumulative desegregative effect does not result from the transfer policy. R. Vol. I, 124.
 
 
 22
 On remand, the district court may determine that the acceptance of any transfers from Barbour County has the cumulative effect of reducing desegregation or reinforcing the dual school system and may therefore enjoin all transfers from Barbour County. If the court should arrive at such a finding, it would not be necessary to order the Eufaula Board to adopt procedures to assure compliance with the Singleton transfer provisions because no students would be transferring into the Eufaula system beginning with the 1978-79 school year. However, in the event that the district court should determine that the acceptance of any transfers from Barbour County is permissible, or in the event that the Eufaula Board should endeavor to modify its policy of accepting transfers from Barbour County only, we feel that the facts of this case merit the relief requested by the United States. Although the Board may have agreed to police the transfer system, it resists on appeal the imposition of the procedures necessary to render the policing efforts effective. We fail to perceive how the Board can evaluate the cumulative effect of the transfer program on a school-by-school basis if it is not even required to identify the transferring and receiving school in each case.
 
 
 23
 Secondly, no analysis of cumulative segregative effect can be accurate if the Board is not even required to verify that students with Eufaula addresses are in fact residents of the city. This is especially true in light of the testimony adduced at the evidentiary hearing concerning the confusion precipitated by changes in the city limits and the closing of rural post offices.
 
 
 24
 We do not necessarily espouse the "stringent, far-reaching policing methods" referred to by the Board with trepidation in its brief. Brief of Appellees at 21. We merely envision that, on remand, the district court will order the Board to adopt a written policy accompanied by procedural details as to time for enrollment and verification of residence, etc., which requires the determination of the actual district of residence of each prospective enrollee, and with respect to transfer students, the identity of the transferring and receiving school in each case. Only by adoption of such a procedure and compliance therewith can cumulative segregative effect be evaluated in the case at bar. Although we sympathize with the personnel difficulties which may be occasioned by the institution of a policing system, administrative inconvenience cannot serve as a roadblock to assuring compliance with the mandate of Singleton. In any event, the policy of the Board of prospectively accepting transfer applications from students residing in Barbour County only will greatly reduce the burden imposed by the implementation of a policing system.
 
 
 25
 In conclusion, the order of the district court is hereby vacated and this case is remanded for the determination of whether transfers from Barbour County reduce desegregation or reinforce the existence of a dual school system in either district. The effect on desegregation must be measured on a school-by-school basis. In the event that the acceptance of transfer applications is permissible, the district court shall order the Eufaula City Board of Education to adopt reasonable procedures to assure compliance with the inter-district student transfer provisions of Singleton.
 
 
 26
 VACATED and REMANDED.
 
 
 
 [1]
 The transfer provision prohibits transfers which have the effect of reducing desegregation in either the district from which the student transfers or the district to which the student is transferring
 
 
 [2]
 The transfer of students from Quitman County into the Eufaula system increased the black student population in Quitman County from 76% to 92%. R. Vol. III, 3
 
 
 [3]
 The Eufaula City School District consists of one kindergarten, two elementary schools, one middle school, and one high school. For the 1976-77 school year, the enrollment in Eufaula's public schools ranged from 56% to 68% white, while the kindergarten enrollment was 72% black. R. Vol. III, 1, 222
 
 
 [4]
 The district-by-district transfers were as follows:
 White Black Total
 ----- ----- -----
Barbour County, Alabama 169 48 217
Bullock County, Alabama 15 2 17
Henry County, Alabama 26 2 28
Russell County, Alabama 21 0 21
Stewart County, Georgia 8 0 8
Quitman County, Georgia 93 2 95
 R. Vol. III, 2-3.
 
 
 [5]
 The change in racial composition by district would be as follows:
 Eufaula city school system from 38.58% black to 42.82% black.
 Barbour County, Alabama, from 78% black to 74% black.
 Bullock County, Alabama, from 98% black to 97% black.
 Henry County, Alabama, no change
 Russell County, Alabama, no change
 Stewart County, Georgia, from 92% black to 91% black.
 Quitman County, Georgia, from 92% black to 76% black.
 R. Vol. III, 2-3.
 
 
 [6]
 The United States urges that the injunction and the one-for-one student exchange should be applied only to white students because Singleton only prohibits those transfers which reduce desegregation. The United States argues that the transfer of black students into the Eufaula system promotes the process of desegregation in the districts involved. This position is erroneous, however, because a ruling that only black students may transfer into the Eufaula system would in itself run afoul of Singleton, which clearly prohibits acceptance of transfers on a racially discriminatory basis. It may well be the case, however, that the ratio of black to white students in a given county may dictate that a larger number of black students may transfer into the Eufaula system without reducing desegregation or reinforcing the existence of a dual school system in the districts involved. However, such statistical relationship in no way dictates that white students may transfer only on a strict one-for-one exchange basis
 
 
 [7]
 There is testimony in the record that the Eufaula school system offers various vocational classes and other subject matter not available in the Barbour County school district. This testimony, however, is largely unsubstantiated
 
 
 [8]
 393 F.2d 690 (5th Cir. 1968)
 
 
 [9]
 Although we specifically refuse to sanction the use of strict quantitative or percentage analysis in measuring the effect of a transfer program on desegregation, we note that the range of deviation may be significant in measuring qualitative segregative effect. For example, a transfer program which has the effect of increasing the black student population in a particular school from 90% to 100% may be more suspect than a corresponding 10% increase from 50% to 60%
 
 
 [10]
 It is incumbent upon the district court to fashion the injunctive relief, should such relief be granted, to alleviate the reduction of desegregation or reinforcement of a dual school system which is found to exist as a result of the transfer policy. For example, it may be appropriate to enjoin the transfer of students from Barbour County as a whole if the transfer policy has the effect of reducing desegregation or reinforces the existence of a dual school system in each attendance zone within the county. Alternatively, the relief should be fashioned so as to apply only to those attendance zones wherein desegregation has been reduced in the event that desegregation in all attendance zones within Barbour County has not been adversely affected as a result of the transfer policy
 
 
 [11]
 The district court's order cannot be upheld on the ground that the Board may have agreed to accept transfers only from Barbour County, Alabama. It is indeed within the discretion of the Board to accept transfer applications from Barbour County only provided that such acceptance is not racially discriminatory in nature. The order, however unnecessarily locks the Board into this position and cannot be sustained. In any event, the order appears unnecessary in light of the announced intention of the Board to accept transfer applications solely from Barbour County
 
 
 [12]
 From the record, we can only presume that all students attending the Eufaula schools are required to enroll annually, and, accordingly, all transfer students presently attending school in Eufaula fall within the announced policy of the Eufaula Board that only transfer applications from Barbour County will be accepted commencing with the 1978-79 school year
 
 
 [13]
 At such time as further proceedings shall be required it may also be necessary to analyze on a school-by-school basis the cumulative effect of the transfer program on desegregation in Quitman County, Georgia, as the record reflects a 16% increase in black enrollment in the system as a whole resulting from the transfer program, but fails to show the effect upon the individual schools within the system
 
 
 [14]
 This problem is particularly troublesome with respect to distinguishing residents of Eufaula from residents of Barbour County who do not reside within the Eufaula city limits. Testimony at the evidentiary hearing of August 18, 1977, revealed that due to the changing of the city limits and the closing of rural post offices, some residents residing within the city limits have Barbour County addresses, while some Barbour County residents who are not residents of Eufaula have Eufaula addresses. R. Vol. II, 23-24, 34